# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8817 | **DATE** | 8/22/2002 |
| **CASE TITLE** | EUROSTEEL CORPORATION vs. M/V MILLENIUM FALSON | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held and continued to 9/12/02 at 9:00 a.m. Enter Memorandum Opinion And Order. Eurosteel was not required to arbitrate the present dispute, and Fednav's motion for summary or in the alternative to stay is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 26 2002 date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


DOCKETED
AUG 2 6 2002

EUROSTEEL CORPORATION, )
)
Plaintiff, )
) No. 01 C 8817
v. )
)
M/V MILLENIUM FALSON, her engines, boilers, ) Judge John W. Darrah
etc.; FEDNAV INTERNATIONAL LTD.; )
MILLENIUM V INC.; and FEDERAL )
MARINE TERMINALS, INC., )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Eurosteel Corporation ("Eurosteel"), filed suit against Defendants, M/V Millenium Falcon, Fednav International Ltd., Millenium V Inc., and Federal Marine Terminals, Inc., alleging Defendants damaged steel coils during overseas transport. On May 29, 2002, Eurosteel dismissed its claim against Federal Marine Terminal Inc. Presently before the Court is Fednav International Ltd.'s ("Fednav") Motion for Summary Judgment dismissing the cause of action or staying the proceedings for failure to arbitrate in accordance with the terms and conditions of the bills of lading.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On October 3, 2000, Fednav entered into a charter party ("Charter Party") with Riss Transport, a foreign entity, in Fos Sur Mer, France. A "charter party" is an agreement by which the owner of a ship lets the ship to another or a "Charterer". Pursuant to the Charter Party, Riss Transport chartered the M/V Millenium Falcon for the carriage of goods between Fos Sur Mer and, among other ports of call, Burns Harbor, Indiana. (Def.'s 56.1(a)(3) Statement ¶ 4). Riss Transport was a member of the Unisor Group, now known as the Arcelor Group ("Arcelor"). Arcelor is an official group of affiliated entities that manufacture products for, and provide services to, commercial steel consumers. Riss Transport provides maritime services to Arcelor. (Id., at ¶ 6). Eurosteel is also a member of the Unisor Group. (Id., at ¶ 7).

The Charter Party, which was drafted by Riss Transport, contains the following clause:

ARBITRATION

Arbitration, if any, to be settled in Paris by Chambre Arbitrale Maritime. General Average, if any, to be settled in Paris.

(Id., at ¶¶ 9-10).

Eurosteel entered into a Bill of Lading, as consignee, for the shipment of steel coils between Fos Sur Mer, France, and Burns Harbor, Indiana. (Def.'s 56.1(a)(3) Statement ¶ 11). The Bill of Lading, on its face, contains the following language: "ALL TERMS, CONDITIONS AND EXCEPTIONS INCLUDING ARBITRATION CLAUSE OF C/P DATED FOS SUR MER 3RD OCTOBER 2000 ARE HEREWITH INCORPORATED" (Id., at ¶ 12). The reverse side of the Bill of Lading includes the following language:

> (1) All terms and conditions, liberties, and exceptions of the Charter Party, dated as overleaf, are herewith incorporated. The Carrier shall in no case be responsible for loss of or damage to cargo arisen prior to loading and after discharging.
> (2) The Hague Rules contained int (sic) the international Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th of August 1924 as enacted in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply."

(Id., at ¶ 13).

Prior to October 24, 2000, the steel coils that are the subject of the instant lawsuit were loaded on board the M/V Millenium Falcon in Fos Sur Mer, France. (Def.'s 56.1(a)(3) Statement ¶ 14). On or about October 24, 2000, the M/V Millenium Falcon commenced its voyage. (Id., at ¶ 15). The steel coils were carried to Federal Marine in Burns Harbor, Indiana, arriving on or about November 18, 2000. (Id., at ¶ 16). The steel coils were discharged from the M/V Millenium Falcon on or about November 20, 2000, and delivered to Eurosteel at that time pursuant to the Bill of Lading. (Id., at ¶ 17).

On November 15, 2001, Eurosteel filed the instant lawsuit alleging, in part, that Fednav breached it duties contemplated under the Bill of Lading. (Def.'s 56.a(a)(3) Statement ¶¶ 18-19).

Fednav argues that summary judgment is proper because Eurosteel was required to arbitrate the instant subject of this suit pursuant to the arbitration clause within the Charter Party and Bill of Lading.

Whether parties have agreed to submit their claims to arbitration is a matter of contract interpretation that is determined by the courts. *See AT&T Tech. v. Communications Workers of Am.*, 475 U.S. 643, 648-49 (1986). This determination is made by applying federal substantive law of

3

arbitrability. Any doubts concerning the scope of arbitrable issues are resolved in favor of arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (*Mitisubishi*). While the Federal Arbitration Act ("FAA") directs courts to place arbitration agreements on equal footing with other contracts, it "does not require parties to arbitrate when they have not agreed to do so". *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). "While ambiguities in the language of the agreement should be resolved in favor of arbitration, [the court does] not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated. 'Arbitration under the [FAA] is a matter of consent, not coercion'". *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, ___ (2002) (citations omitted). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration...." *Mitisubishi*, 473 U.S. at 626.

In Illinois, contract terms are given their ordinary meaning. *See Interim Health Care of Northern Ill., Inc. v. Interim Health Care, Inc.*, 225 F.3d 876, 879 (7th Cir. 2000) (*Health Care*); *Diehl v. Twin Disc, Inc.*, 102 F.3d 301, 305 (7th Cir. 1996). A contract is ambiguous if its language is reasonably and fairly susceptible to more than one meaning. *Health Care*, 225 F.3d at 879. Meaning is given to each provision of the contract, and the fact that the parties dispute the meaning of a contract provision does not render the contract ambiguous. *Health Care*, 225 F.3d at 879.

Fednav relies solely on the following language as requiring arbitration: "Arbitration, if any, to be settled in Paris by Chambre Arbitrale. General Average, if any, to be settled in Paris." This language is not ambiguous as its meaning is not reasonably and fairly susceptible to more than one meaning.

Contrary to Fednav's argument, the arbitration clause does mandate arbitration of disputes. The arbitration clause states that "[a]rbitration, *if any*" will take place in Paris. The prepositional phrase "if any" indicates that arbitration will take place in Paris *if* arbitration takes place. Furthermore, the Charter Party and Bill of Lading contain no additional language mandating that disputes be brought by arbitration. *See Hoogovens Ijuiden Verkoopkantoor v. M.V. Sea Cattleya*, 852 F.Supp. 6, 8 (S.D.N.Y. 1994) (finding clause: "General Average and arbitration to be settled in the Netherlands" did not mandate arbitration; instead, if arbitration were to be conducted, whether voluntarily agreed upon or required by some other contractual clause, arbitration would proceed in the Netherlands). *Compare, Vimar Seguros Y Reseguros v. M/V Sky Reefer*, 515 U.S. 528 (1995) (arbitration clause stated that disputes "*shall* be referred to arbitration"); *Mitisubishi*, 473 U.S. at 617 ("[a]ll disputes ... *shall* be finally settled by arbitration in Japan...."). In other words, the parties *could* arbitrate a dispute; and, if they chose to do so, such arbitration would take place in Paris. The mandate is that *if* arbitration does take place, it must be conducted in Paris by Chambre Arbitrale.

The instant case is readily distinguished from cases cited by Defendants that have required arbitration to proceed based on contract language that such mandated arbitration. *See e.g., Duferco Steel Inc., v. M/V Kalista*, 121 F.3d 321 (7th Cir. 1997) ("all disputes arising out of the performance or interpretation of this contract shall be referred to arbitration..."); *Steel Warehouse Co. v. Abalone Shipping Ltd.*, 141 F.3d 234, 238 (5th Cir. 1998) ("all disputes from time to time arising out of this contract shall ... be referred to final arbitration...."

Furthermore, assuming argumendo, that the Court found that the terms of the contract were ambiguous and required the Court to review the intent of the parties, as argued by Fednav, the motion must still be denied. Fednav produced the declaration of J.P. Stoclin, the Chartering

5

Manager of Riss Transport, in which he avers that the clause in dispute was drafted by Riss Transport after negotiation with Fednav. He declares that it has never been the intention of Riss Transport that arbitration of any controversies be mandatory and that if the parties decided to arbitrate disputes, the location of the arbitration would be in Paris.

Based on the above, Eurosteel was not required to arbitrate the present dispute, and Fednav's Motion for Summary or in the Alternative to Stay is denied.

Dated: August 22, 2002

JOHN W. DARRAH
United States District Judge